UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **TERESINE TARVER** | * | **CIVIL ACTION NO. 11-0219** |
| **VERSUS** | * | **JUDGE DONALD E. WALTER** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

## Background & Procedural History

Teresine Tarver protectively filed the instant application for Title II Disability Insurance Benefits on July 29, 2008. *See* Tr. 12, 98-100. She alleged disability as of April 14, 2008, because of Meniere's disease, diabetes, and depression. (Tr. 109, 133-134). The claim was denied at the initial stage of the administrative process. (Tr. 56-61). Thereafter, Tarver requested and received a February 25, 2009, hearing before an Administrative Law Judge ("ALJ"). (Tr. 23-55). In a September 29, 2009, written decision, the ALJ determined that Tarver was not disabled under the Act, finding at step four of the sequential evaluation process that she was able to return to her past relevant work as a bookkeeper. (Tr. 9-18). Tarver appealed the adverse decision to the Appeals Council. On December 17, 2010, however, the Appeals Council

denied Tarver's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).[1]

On February 9, 2011, Tarver sought review before this court. Fairly restated, she alleges the following errors:

(1) the ALJ failed to obtain medical expert testimony to discern whether plaintiff's Meniere's disease medically equals Listing 2.07 at step three of the sequential evaluation process;

(2) the ALJ's residual functional capacity assessment is not supported by substantial evidence; and

(3) the ALJ's step four determination is not supported by substantial evidence.

### Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's

---

[1] The Commissioner set aside an earlier, December 30, 2009, decision, so it could consider new evidence submitted by plaintiff. *See* Tr. 5-7.

determination.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

## **Determination of Disability**

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

    (1)    An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

    (2)    An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

    (3)    An individual whose impairment(s) meets or equals a listed impairment in

>   [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.
>
> (4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.
>
> (5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

See *Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

### I. Steps One and Two

The ALJ determined at step one of the sequential evaluation process that Tarver did not engage in substantial gainful activity during the relevant period. (Tr. 14). At step two, he found that she suffers from Meniere's disease – a severe impairment. *Id*.

### II. Step Three

The ALJ next concluded that Tarver's Meniere's disease was not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 14-15). Specifically, the ALJ found that Tarver did not meet the

paragraph "A" criterion for listing 2.07. *Id*.

Plaintiff does not dispute that she fails to meet all of the criteria for listing 2.07.[2] Instead, she argues that pursuant to Social Security Ruling 96-6p, the ALJ should have obtained an opinion from a medical expert as to whether her impairment medically equals listing 2.07: "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." SSR 96-6p. Of course, although Social Security Rulings are not binding on the federal courts,[3] they are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1).

Here, the record contains an August 29, 2008, assessment by non-examining agency physician, Jeffrey Faludi, M.D., in which he opined that Tarver did not have the longitudinal history to meet the listing for Meniere's disease or sufficient "ENT" data to support a finding that she even suffered from a severe impairment. (Tr. 218). In other words, the agency physician believed that a "not disabled" finding was warranted at step two of the sequential evaluation process.

However, because more recent medical evidence that post-dates Dr. Faludi's opinion was entered into the record and considered by the ALJ, plaintiff contends that the ALJ was required to obtain an updated opinion regarding medical equivalency. Plaintiff again cites to Social

---

[2] Indeed, the medical source statements confirm that she did not have "[d]isturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests . . ." as required by paragraph "A" of listing 2.07. (Tr. 219, 240). In fact, one medical source statement indicated that she did not suffer progressive hearing loss, as required by the introductory paragraph of listing 2.07. (Tr. 240).

[3] *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001)

5

Security Ruling 96-6p which requires an updated opinion from a medical expert:

> * When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
>
> * When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

SSR 96-6p.

However, plaintiff does not identify any additional medical findings or evidence which "in the opinion" of the ALJ or Appeals Council should have compelled an updated medical expert opinion.

Furthermore, under the regulations, the Commissioner will find medical equivalence despite a claimant's failure to exhibit all of the findings for a particular listing, so long as the claimant has other findings related to the impairment that are of equal medical significance to the required criteria. 20 C.F.R. § 404.1526(b). Again, it is plaintiff's burden to "provide medical findings that support each of the criteria for the equivalent impairment determination." *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (citing *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 891-92 (1990) and 20 C.F.R. § 404.1526(a)). She has not made that showing here; thus, the court necessarily finds that the ALJ's step three determination is supported by substantial evidence. *Selders, supra.*

Nonetheless, because this matter is being reversed on other grounds, *see* discussion, *infra*, plaintiff will have the opportunity, on remand, to demonstrate to the ALJ how her impairment medically equals listing 2.07, such as to warrant an updated medical expert opinion on

equivalency.

### III. Residual Functional Capacity

The ALJ next determined that Tarver retains the residual functional capacity to perform sedentary work, except that she can only occasionally bend, stoop, crouch, crawl, kneel, balance, climb stairs and ladders, reach overhead, and drive. (Tr. 15).[4] She also can never be around dangerous moving machinery or a noisy work environment. *Id*.

Plaintiff obliquely challenges the sufficiency of the ALJ's residual functional capacity assessment by arguing that the ALJ's hypothetical to the vocational expert at step four of the sequential evaluation process failed to incorporate all of her limitations. Specifically, she contends that the ALJ's determination that she can occasionally bend is not supported by substantial evidence. She further argues that the ALJ's residual functional capacity failed to account for the frequency of her attacks.

Plaintiff's argument is well-taken. At the hearing, plaintiff readily conceded that when she was not experiencing a flare-up, she could meet the exertional demands for sedentary work, with the caveat that she could never bend or tilt her head back because this made her dizzy and susceptible to an attack. *See* 29-33. Plaintiff further testified that when she has a flare-up or a bad day, she becomes dizzy, nauseous, and is confined to bed. (Tr. 28-29). These episodes occur two to three times per week, and last for two to three days. (Tr. 28).

---

[4] Sedentary work entails:
> . . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a).

The ALJ discounted plaintiff's testimony to the extent that it was inconsistent with his residual functional capacity assessment. (Tr. 16). In so deciding, he noted that Tarver's alleged problems with Meniere's disease were not supported by the longitudinal objective evidence. He further noted that she had misrepresented that she had stopped smoking cigarettes five years earlier. (Tr. 16).

The ALJ also acknowledged medical source statements by plaintiff's treating physicians, Drs. Norris and Anders. With regard to the former, the ALJ assigned no more than "some" weight to Norris's opinion that Tarver experienced several attack of vertigo per week because Norris's opinion was based on Tarver's subjective complaints and was inconsistent with his own treatment notes which reflected that Tarver averaged four to five attacks per month. *See* Tr. 16, 219, 224.

On the other hand, the ALJ assigned "significant" weight to Dr. Anders' opinion that during one of Tarver's "episodes," she experiences loss of balance, dizziness, and nausea, which prevent her from standing, sitting, lifting, or bending. (Tr. 234). Nonetheless, the ALJ declined to assign "great weight" to Anders' opinion because Anders failed to indicate the frequency of plaintiff's attacks. (Tr. 17).

When, as here, the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate, "absent other medical opinion evidence based on personal examination or treatment of the claimant," the ALJ is obliged to re-contact the treating physician for clarification. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) (emphasis added). However, the instant ALJ did not re-contact Dr. Anders to ascertain the frequency of Tarver's vertiginous episodes. Moreover, the only other evidence regarding the frequency and duration of plaintiff's vertiginous episodes is from plaintiff's testimony and Dr. Norris's records, indicating that she

averages at least four to five attacks per month, lasting for two to three days at a time.  *See* Tr. 38, 224.  The ALJ's residual functional capacity assessment does not address the frequency or duration of plaintiff's vertiginous episodes or whether they would affect her ability to maintain a job.  *See Watson v. Barnhart*, 288 F.3d 212 (5th Cir.2002).

  The court further finds that the instant record does not substantially support the ALJ's residual functional capacity for periods when Tarver is not experiencing an attack.  The ALJ again purports to rely on Dr. Anders' medical source statement, specifically his March 4, 2009, addendum wherein Anders clarified that the "above comments apply [with] limitations only during episodes." (Tr. 234).  The ALJ interpreted this statement to mean that according to Anders, Tarver was "limited only during her attacks . . ." (Tr. 17).  The court is not so persuaded.  While Anders' statement plainly contemplated Tarver's condition during one of her episodes, it does not reasonably support the inverse inference that she otherwise suffered no limitations at all during intervening periods of remission.

  The only other evidence regarding the effects of plaintiff's impairment during periods of remission stems from plaintiff herself and includes her self-professed limitations that she can never bend or look up.  Needless to say, these limitations are inconsistent with the ALJ's residual functional capacity assessment, and he endeavored to discount plaintiff's credibility.  However, to the extent that the ALJ provided valid reasons for discounting plaintiff's allegations, *see* discussion, *supra*, the record remains otherwise devoid of the requisite medical assessment or corroborating evidence to support the ALJ's residual functional capacity determination.  Accordingly, the court is compelled to find that the ALJ's assessment is not supported by substantial evidence.  *See Williams v. Astrue*, 2009 WL 4716027 (5th Cir. Dec. 10, 2009) (unpubl.) ("an ALJ may not rely on his own unsupported opinion as to the limitations presented

by the applicant's medical conditions"); *Ripley v. Chater,* 67 F.3d 552, 557 -558 (5th Cir. 1995) (substantial evidence lacking where: no medical assessment of claimant's residual functional capacity, and claimant's testimony was inconsistent with ALJ's assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).

Upon remand, the ALJ should obtain medical opinion evidence to support a determination regarding the frequency and duration of plaintiff's exacerbations, plus a medical source statement addressing the effects of her impairment during periods of remission. In so doing, efforts should be made to obtain this information from Dr. Anders and the new treating specialist, Dr. Shea. If necessary, the ALJ also may obtain a consultative *examination* by an Ear, Nose, and Throat specialist, who also can review plaintiff's longitudinal medical records, and issue an opinion regarding the effects, frequency, and duration of plaintiff's episodes and remissions throughout the relevant period.

## IV.　**Step Four**

Because the foundation for the Commissioner's step four determination was premised upon a residual functional capacity assessment that is not supported by substantial evidence, the court further finds that the Commissioner's ultimate conclusion that plaintiff is not disabled also is not supported by substantial evidence.[5]

## Conclusion

For the above-stated reasons,

---

[5] The court need not reach plaintiff's remaining assignment(s) of error. The issue(s) may be addressed upon remand.

**IT IS RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 18th day of January 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE